**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

C. ELI-JAH HAKEEM
MUHAMMAD, a/k/a Christopher
Mitchell,

Petitioner-Appellant,

v.

R. WILEY, ADX Warden,

Respondent-Appellee.

Nos. 08-1351 & 08-1383
(D.C. Nos. 1:06-CV-01128-WYD &
1:06-CV-01013-WYD)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

---

Petitioner-appellant, C. Eli-jah Hakeem Muhammad, is a federal prisoner

currently in the custody of the United States Bureau of Prisons (Bureau) at ADX

Florence, Colorado. In two separate appeals, which we consolidate for procedural

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

purposes only, Muhammad appeals from the district court's dismissals of his pro se applications for habeas corpus brought under 28 U.S.C. § 2241 challenging two prison disciplinary convictions. Those convictions resulted in the loss of good time credits. We review the district court's dismissal of the habeas corpus applications de novo. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Because Muhammad is appealing pro se, "we construe his pleadings liberally, but we do not act as his advocate." *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

On January 7, 2004, Muhammad was involved in an altercation with prison guards that resulted in the filing of two separate incident reports against him, each charging him with assault. He was placed in administrative detention pending review by prison authorities and later by the Federal Bureau of Investigation (FBI). After the FBI returned the case to the Bureau of Prisons, a prison official determined that the matter should be referred to the Unit Disciplinary Committee (UDC). Because of the nature of the charges, the UDC was required to refer the matter to a Discipline Hearing Officer (DHO). Muhammad challenges the procedures used by the prison during the various disciplinary hearings, contending that he was denied due process and that the convictions should be expunged and his credits restored.

Muhammad's first claim in appeal No. 08-1351 is that he was subjected to unduly harsh confinement in the Special Housing Unit in the days before his

disciplinary hearings and that this was done in retaliation for filing various complaints and grievances. This claim challenges a condition of Muhammad's confinement and is therefore inappropriate for § 2241 relief. *See Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000) (explaining that the Supreme Court "has distinguished between habeas actions and those challenging conditions of confinement under 42 U.S.C. § 1983," leading us to recognize that "federal claims challenging . . . conditions of . . . confinement generally do not arise under § 2241"). The district court correctly dismissed this claim.[1]

Turning to Muhammad's claims relative to the disciplinary procedures resulting in the deprivation of his good-time credits, we note that, while a federal prisoner has a liberty interest in his earned good-time credits which entitles him to due process at the disciplinary hearing, *Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987), those rights are not coextensive with the due process rights of defendants still involved in the criminal process or with free persons, *Wolff v.*

---

[1]     As a general matter, Muhammad argues throughout his briefs that prison officials failed to follow specific regulations dealing with prison disciplinary procedures resulting in due process violations. As part of this claim, he argues that 28 C.F.R. § 541.22 creates a protected liberty interest. Aside from the fact that 28 C.F.R. § 541.22 does not create a constitutionally protected liberty interest, *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)), Muhammad's discussion of liberty interests and procedural violations are beside the point in these § 2241 actions. The contours of Muhammad's due process rights relative to his prison discipline were defined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Our task is to determine whether those minimum due process requirements were met and whether the Discipline Hearing Officer's findings were supported by at least some evidence. *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

*McDonnell*, 418 U.S. 539, 556 (1974); *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007). Providing a prisoner with the minimum process due in a disciplinary proceeding requires (1) written notice of the claimed violation delivered to the prisoner at least twenty-four hours before a disciplinary hearing; (2) the opportunity for the prisoner to call witnesses or present documentary evidence in his defense so long as doing so would not be unduly hazardous to the safety or goals of the institution; and (3) a written statement of the evidence relied upon and the reasons for the decision. *Wolff*, 418 U.S. at 563-566. The decision of a prison disciplinary board must be supported by some evidence in the record. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005) "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "A disciplinary board's decision can be upheld by a reviewing court even if the evidence supporting the decision is meager." *Howard v. U. S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (quotations omitted).

With liberal construction, and setting aside claims based on failure to adhere to prison regulations, we have identified Muhammad's claims relative to

the two discrete stages of the disciplinary procedure at issue in appeal No. 08-1351: 1) the officials in charge of the Unit Disciplinary Committee (UDC) improperly waived Muhammad's right to attend the hearing and present a defense, and the UDC improperly referred the matter to the Disciplinary Hearing Officer (DHO); and 2) with respect to the DHO hearing, Muhammad was denied the right to present an exculpatory video tape, and the *Wolff* requirements were not met.

With regard to the UDC issues, we agree with the district court; there is some evidence that Muhammad attended the hearing. The form filled out as part of the UDC hearing states the prisoner had no comment at the proceeding. While this does not necessarily mean the prisoner attended the proceeding, the record in the companion case, No. 08-1383, of which we take judicial notice, contains a declaration filed under the penalty of perjury and signed by Sherry Beicker, a case manager at the United States Penitentiary-High Security in Florence. Ms. Beicker stated, in her usual practice, if an inmate did not attend a hearing she would note that the inmate had declined to appear, rather than he had no comment. R. (08-1383), Doc. 15, Ex. B at 2. The UDC report, stating Muhammad had no comment is some evidence that he attended the hearing.

Turning to the *Wolff* requirements, it is undisputed that Muhammad was notified of the charges against him on the day of the incident and well before the first disciplinary hearing before the UDC. Muhammad had already submitted a

-5-

personal statement to a prison investigator about the incident prior to the UDC hearing, R. (08-1351), Doc. 14 Attach. 5; he was afforded the opportunity to present a defense. Had he wanted to augment his response, he had the opportunity to do so at the UDC hearing but waived the right by declining to comment. Because of the serious nature of the charges which the UDC found to be supported by declarations of the prison officials involved, the UDC was required to submit the matter to the DHO. 28 C.F.R. § 541.15(h). No constitutional infirmity arose from the UDC following required procedure. On the same day as the UDC hearing, Muhammad was given notice of its decision to refer the matter to the DHO, thus satisfying all of the *Wolff* requirements relative to the UDC proceeding.

Turning to the DHO hearing, we conclude the due process requirements of *Wolff* were satisfied. On the day of its decision Muhammad received notice of the UDC's referral of the case to the DHO. The notice specifically advised the charge against Muhammad was assault with serious injury. After receiving the notice, Muhammad refused the right to have a staff representative and to present witnesses. He also refused to sign the notice. R. (08-1351), Doc. 14, Attach. 9.

The DHO hearing report indicates that, while Muhammad denied the charges against him, he declined to make an oral statement or to present a written statement to the DHO. He also declined the right to present witnesses, undercutting his argument that he should have been given the opportunity to

-6-

present the surveillance video tape of the incident. The DHO report, which outlined the charge, the evidence relied upon, and the reasons for the decision was delivered to Muhammad the day after the hearing. Included in the evidence reviewed by the DHO were supporting memoranda by prison officials involved in the incident, as well as the injury assessment forms generated as a result of the incident. This was certainly some evidence to support the DHO decision. Like the UDC hearing, the hearing before the DHO provided Mr. Muhammad with the process to which he was due. For the reasons stated above, in appeal No. 08-1351, we affirm the district court's denial of Muhammad's application for relief under 28 U.S.C. § 2241.

The facts and issues in appeal No. 08-1383 are virtually identical to the issues in 08-1351, which we have just affirmed. One issue, however, deserves brief mention. In 08-1383, the Bureau argued the doctrine of laches should bar Muhammad's application because he filed it more than one year after the exhaustion of his administrative remedies. While the Bureau references the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) as support for this claim, it notes in a footnote that the doctrine of laches is invoked, presumably instead of AEDPA, "because the DHO had retired. Thus BOP did not have a declaration from the DHO." Answer Br. at 9 n.4. We are unclear why this fact would present a problem in making a limitations argument under AEDPA, but, in

any case, since resolution of this issue would not alter our ultimate affirmance of the dismissal in appeal No. 08-1383, we decline to address the issue.

The judgments of the district court are AFFIRMED. Muhammad's motions to proceed in forma pauperis are GRANTED. Muhammad must continue making partial payments until the filing fees are paid in full.

Entered for the Court

Terrence L. O'Brien
Circuit Judge